IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHAEL J. CAMMARANO, JR., : <br>     Plaintiff, : <br> : <br> v. : <br> : <br> DETECTIVE THOMAS M. WEAVER, : <br> *et al.*, : <br>     Defendants. : | CIVIL ACTION NO. 25-CV-2117 |

<u>MEMORANDUM</u>

**HENRY, J.**                                                                                                                                                                            **January 5th, 2026**

        Michael J. Cammarano, Jr., filed a *pro se* Complaint in April 2025, asserting civil rights violations based on an arrest. Cammarano named as Defendants Detective Thomas M. Weaver, District Attorney John T. Adams, and the County of Berks. For the reasons set forth below, this matter will be dismissed with prejudice for failure to prosecute.

**I.    FACTUAL ALLEGATIONS AND PROCEDURAL HISTORY**[1]

        The events that underlie Cammarano's claims are alleged to have begun on August 29, 2022, when Cammarano was arrested "by officers from the Berks County District Attorney's Office, including Detective Thomas Weaver." (Compl. at 6.) Cammarano was, at that time, a licensed attorney, and he asserts that "[t]he arrest was related to a dispute between a former client of [Cammarano's] and [the client's] prior counsel over a contingency fee." (*Id.*) Cammarano was "charged with theft and conspiracy to commit theft." (*Id.*) In brief, Cammarano alleges that Defendants Weaver and Adams proceeded with Cammarano's arrest and prosecution, despite having knowledge that the dispute between his former client and the

---

[1] The factual allegations set forth in this Memorandum are taken from Cammarano's Complaint (ECF No. 2). The Court adopts the sequential pagination assigned by the CM/ECF docketing system.

client's prior counsel had been settled in civil litigation prior to Cammarano's arrest.[2] (*Id.*) Cammarano states that "[o]n April 26, 2023, a judge dismissed all charges against [him] with prejudice in a habeas corpus proceeding, citing a lack of evidence and no probable cause. The judge specifically found that the underlying fee dispute was civil in nature and that the [client's prior counsel] had refused multiple requests to substantiate their claimed entitlement [to the contingency fee]." (*Id.*) Through this action, Cammarano asserts federal constitutional claims pursuant to 42 U.S.C. § 1983 and various state tort claims, and he seeks damages and injunctive relief for "reputational and emotional" injuries. (*Id*. at 7.)

In an Order dated June 5, 2025, the Court granted Cammarano *in forma pauperis* status and appointed the Clerk of Court to send waivers of service to the Defendants pursuant to Federal Rule of Civil Procedure 4(d). (ECF No. 5.) The waivers of service were returned executed by all three Defendants on June 30, 2025. (ECF Nos. 9, 10, 11.) On August 5, 2025, the Defendants filed a Motion to Dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6) (ECF No. 12) (the "Motion"). Defendant Adams argues that he is entitled to absolute prosecutorial immunity from the bulk of Cammarano's claims against him. (*See* ECF No. 12-1 at 4-5 (citing, *inter alia*, *Imbler v. Pachtman*, 424 U.S. 409, 420, 431 (1976); *Odd v. Malone*, 538 F.3d 202, 207-08 (3d Cir. 2008)).) Defendant Berks County argues that Cammarano has not stated a claim for municipal liability pursuant to *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), either against the County itself or against Defendants Weaver and Adams in their official capacities, because Cammarano "failed to plausibly identify any official policy or custom that

---

[2] Although no record of the criminal proceedings is publicly available, the Court notes that Cammarano was disbarred by Order of the Supreme Court of Pennsylvania dated April 30, 2024. *See Off. of Disciplinary Counsel v. Cammarano*, No. 147 DB 2021 (Pa. Apr. 30, 2024).

caused a constitutional violation." (*Id.* at 10-12.)  And all Defendants argued that Cammarano's remaining claims are untimely or fail to state a claim to relief.  (*Id.* at 6-9.)

By Order dated August 5, 2025, Cammarano was directed to file a response to the Motion by September 4, 2025.  (ECF No. 13.)  When Cammarano failed to timely file a response, the Court issued an Order to Show Cause on December 1, 2025, directing Cammarano to explain why this case should not be dismissed for failure to prosecute and directing Cammarano to file a response to the Defendants' Motion if he intended to prosecute his case.  (*See* ECF No. 14.)  Cammarano has not responded to that Order, either, and his time to do so has now expired.  For the reasons set forth below, Cammarano's Complaint will be dismissed with prejudice.

## II.    STANDARD OF REVIEW

Given Cammarano's failure to respond to the Court's Orders, the Court will consider whether it is appropriate to dismiss this case for failure to prosecute.  Federal Rule of Civil Procedure 41(b) allows for the dismissal of an action when a plaintiff fails to prosecute the case, fails to comply with the rules of procedure, or fails to comply with a court order.  *See* Fed. R. Civ. P. 41(b).  "A District Court has the authority to dismiss a suit *sua sponte* for failure to prosecute by virtue of its inherent powers and pursuant to Federal Rule of Civil Procedure 41(b)."  *See Sebrell ex rel. Sebrell v. Philadelphia Police Dep't*, 159 F. App'x 371, 373 (3d Cir. 2005) (*per curiam*) (citing *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630-31 (1962)).  Ordinarily, a court determining whether to *sua sponte* dismiss a case because of a plaintiff's failure to prosecute must consider several factors as set forth in *Poulis v. State Farm Fire and Cas. Co.*, 747 F.2d 863 (3d Cir. 1984).  *See, e.g., Spain v. Gallegos*, 26 F.3d 439, 454-55 (3d Cir. 1994).  However, an analysis under *Poulis* usually is not required when a plaintiff willfully abandons the

case or makes adjudication impossible.  *See Dickens v. Danberg*, 700 F. App'x 116, 118 (3d Cir. 2017) (*per curiam*) ("Where a plaintiff's conduct clearly indicates that he willfully intends to abandon the case, or where the plaintiff's behavior is so contumacious as to make adjudication of the case impossible, a balancing of the *Poulis* factors is not necessary."); *Baker v. Accounts Receivables Mgmt., Inc.*, 292 F.R.D. 171, 175 (D.N.J. 2013) ("[T]he Court need not engage in an analysis of the six *Poulis* factors in cases where a party willfully abandons her case or otherwise makes adjudication of the matter impossible." (citing cases)).

In the context of a pending motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), granting a defendant's motion to dismiss a case where the plaintiff has failed to respond thereto is effectively akin to sanctioning the plaintiff for failing to comply with a local rule or court order, and a "drastic" sanction like dismissal with prejudice requires a *Poulis* analysis.  *See Stackhouse v. Mazurkiewicz*, 951 F.2d 29, 29-30 (3d Cir. 1991).  A court cannot grant a Rule 12 motion as "unopposed" or "uncontested" without a *Poulis* analysis.  *See, e.g., Washington v. Wenerowicz*, No. 21-2741, 2022 WL 39870, at *2 n.5 (3d Cir. Jan. 5, 2022) (*per curiam*); *Adkins v. Reynolds*, 788 F. App'x 824, 828 (3d Cir. 2019) (*per curiam*); *Wiggins v. MacManiman*, 698 F. App'x 42, 43-44 (3d Cir. 2017) (*per curiam*); *Jones v. Unemployment Comp. Bd. of Rev.*, 381 F. App'x 187, 189 (3d Cir. 2010) (*per curiam*); *Shuey v. Schwab*, 350 F. App'x 630, 632-33 (3d Cir. 2009); *Hernandez v. Palakovich*, 293 F. App'x 890, 895-96 (3d Cir. 2008).  That is so even if, as here, the plaintiff has been ordered to respond and warned that failure to respond could result in dismissal.  *Brzozowski v. Pennsylvania Tpk. Comm'n*, 738 F. App'x 731, 734 (3d Cir. 2018) (*per curiam*) (remanding where "[t]he District Court did not acknowledge the Poulis factors.  Instead, in dismissing Brzozowski's amended complaint, the District Court merely noted that: (1) it directed Brzozowski to respond to the Commission defendants' motion; (2) it

warned him that failure to respond might result in dismissal; and (3) Brzozowski nevertheless failed to respond."). Thus, the Court will consider the *Poulis* factors to determine whether it is appropriate to dismiss Cammarano's case for failure to prosecute.

## III.    DISCUSSION

In *Poulis*, the United States Court of Appeals for the Third Circuit articulated six factors to consider when determining whether to dismiss an action due to a plaintiff's failure to prosecute:

> (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary . . . ; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense.

747 F.2d at 868 (emphasis omitted). When balancing the *Poulis* factors, there is no "magic formula," "no single *Poulis* factor is dispositive," and all six factors need not be satisfied for a court to dismiss a complaint. *See Briscoe v. Klause*, 538 F.3d 252, 263 (3d Cir. 2008). In this case, an assessment of the *Poulis* factors weighs in favor of dismissing this action.

As to the first *Poulis* factor, the extent of the party's personal responsibility, it is Cammarano's sole responsibility to prosecute his case and comply with Court orders. *See id.* at 258-59 (explaining that "a pro se plaintiff is personally responsible for complying with the court's orders" and "it is logical to hold a pro se plaintiff personally responsible for delays in his case because a pro se plaintiff is solely responsible for the progress of his case"); *Emerson v. Thiel Coll.*, 296 F.3d 184, 191 (3d Cir. 2002) (where litigant was proceeding *pro se*, any failure to comply with orders was attributable to him). Cammarano was given two opportunities to file a response the Defendants' Motion: the first when the Motion initially was filed and he was directed to respond, and the second when the Order to Show cause was issued. (*See* ECF Nos.

13, 14.) Cammarano was expressly informed that if he failed to respond to the Court's Order to Show Cause and file a response, this case would be dismissed for failure to prosecute. (*See* ECF No. 14.) Nonetheless, Cammarano failed to file a response to the Motion and did not communicate with the Court in any other respect. Cammarano, as a self-represented litigant, is solely responsible for complying with the Court's orders. Further, as a former attorney, Cammarano should be familiar with the requirement that he respond to motions and comply with Court orders. This factor, therefore, weighs in favor of dismissal.

The second factor, prejudice to the defendants, is neutral here. "Examples of prejudice include 'the irretrievable loss of evidence, the inevitable dimming of witnesses' memories, or the excessive and possibly irremediable burdens or costs imposed on the opposing party.'" *Adams v. Trustees of New Jersey Brewery Employees' Pension Tr. Fund*, 29 F.3d 863, 874 (3d Cir. 1994) (quoting *Scarborough v. Eubanks*, 747 F.2d 871 (3d Cir. 1984). Since this case is in its early stage of litigation, there appears to be no prejudice to the Defendants at this point. However, as a practical matter, it is unclear how the Defendants could be expected to defend against a case with an unresponsive plaintiff if the case were to move forward.

The third factor, a history of dilatoriness, must be assessed over the lifetime of the case, keeping in mind that "conduct that occurs one or two times is insufficient." *Briscoe*, 538 F.3d at 261. However, "[e]xtensive or repeated delay or delinquency constitutes a history of dilatoriness, such as . . . consistent tardiness in complying with court orders." *Adams*, 29 F.3d at 874. On the one hand, this case is in the early stages of litigation. On the other hand, the litigation cannot proceed beyond its initial stage due to Cammarano's failure to comply with the Court's Orders to file his response. The delay is solely attributable to Cammarano and nothing in the record provides a reasonable explanation as to why he is unable to comply with the

Court's directives. For example, there is no indication on the docket that Cammarano failed to receive the Court's Orders directing him to file his response. Because the record shows unexplained delays in Cammarano's prosecution of the case, this factor weighs in favor of dismissal.

The fourth factor, whether plaintiff's conduct was willful or in bad faith, weighs in favor of dismissal. As noted above, Cammarano has been expressly and repeatedly instructed on what he was required to do to prosecute this case, namely respond to the pending Motion, and also has been expressly informed of the consequences of the failure to comply with the Court's Orders. The Court's most recent Order (ECF No. 14) made clear that if Cammarano failed to comply with the Order, his case could be dismissed. On this record, Cammarano's failure to file a response may fairly be understood as willful. That conclusion is further supported by the inference that Cammarano, a former attorney, would understand the consequence of failing to oppose a motion to dismiss his complaint.

An examination of the fifth factor, the effectiveness of sanctions other than dismissal, reveals that no other sanction would be effective. Cammarano is proceeding *pro se* and his apparent refusal to respond to the pending Motion, if left unaddressed, would be a complete barrier to this case proceeding beyond the pleadings stage. Given the procedural posture of this case, Cammarano's *pro se* and *in forma pauperis* status, and Cammarano's apparent unwillingness to prosecute his claims by responding to the pending Motion, it is difficult to determine what lesser sanction might be available or appropriate in this context. *See Adonai-Adoni v. King*, 506 F. App'x 116, 119 (3d Cir. 2012) (*per curiam*) ("Because Adonai-Adoni proceeded *pro se* and *in forma pauperis*, monetary sanctions were not a viable form of alternative sanction."); *Guyer v. Beard*, 907 F.2d 1424, 1430 (3d Cir. 1990) (affirming dismissal

of case where dilatory conduct "made adjudication of the case impossible. Therefore, any lesser sanction would not have furthered the interests of justice."); *King v. Galano*, No. 14-1691, 2015 WL 6523459, at *3 (D.N.J. Oct. 28, 2015) ("Plaintiff's history of nonparticipation and noncompliance in this matter suggests that alternative sanctions would be futile."). As such, no other sanction would be effective. The fifth factor thus weighs in favor of dismissal.

Under the sixth *Poulis* factor, the Court must consider if the claims or defenses are meritorious. *See Poulis*, 747 F.2d at 869-70 ("A claim or defense, will be deemed meritorious when the allegations of the pleadings, if established at trial, would support recovery by plaintiff or would constitute a complete defense."). Here, the Defendants have advanced compelling arguments as to prosecutorial immunity, lapse of the relevant statutes of limitations, and other fatal deficiencies in Cammarano's Complaint. (*See generally* ECF No. 12 at 4-12.) The Court specifically notes that the Defendants appear to be correct that the majority of Cammarano's claims appear to be untimely. The timeliness of Cammarano's § 1983 claims are governed by Pennsylvania's two-year statute of limitations. *See* 42 Pa. Cons. Stat. § 5524; *Wallace v. Kato*, 549 U.S. 384, 387 (2007); *Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009). A claim accrues "when a plaintiff has a complete and present cause of action, that is, when [he] can file suit and obtain relief." *Dique v. N.J. State Police*, 603 F.3d 181, 185 (3d Cir. 2010) (quotations omitted). In general, this means that the statute of limitations will start running at the time the plaintiff "knew or should have known of the injury upon which [his] action is based." *Sameric Corp. of Del. v. City of Phila.*, 142 F.3d 582, 599 (3d Cir. 1998).

Cammarano's claims for false arrest, unreasonable seizure, and first amendment retaliation all accrued on the date of his arrest, August 29, 2022, so the Court agrees that they

appear untimely.³  *See Lloyd v. Ocean Twp. Counsel*, 857 F. App' x 61,64 (3d Cir. 2021) (*per curiam*) (noting that false arrest and imprisonment claims begin to run at the time the plaintiff was " detained pursuant to legal process"); *LeBlanc v. Snavely*, 453 F. App' x 140, 142 (3d Cir. 2011) (*per curiam*); *Nguyen v. Pennsylvania*, 906 F.3d 271, 273 (3d Cir. 2018) (illegal search claims accrue at "the moment of the search"); *Ojo v. Luong*, 709 F. App'x 113, 116 (3d Cir. 2017) (*per curiam*) ("Most of [plaintiff's claims] accrued when defendants conducted their searches and seizures on July 11, 2011, because [plaintiff] knew or should have known the basis for these claims at that time."); *Sevast v. Kakouras*, 915 A.2d 1147, 1153 (Pa. 2007) (explaining that in Pennsylvania, "the statute of limitations begins to run as soon as the right to institute and maintain the suit arises").  The Defendants have also made compelling arguments that Cammarano's allegations fail to state a *Monell* claim, a substantive due process claim, or a claim for abuse of process under state law.  (*See* ECF No 12-1 at 6-7, 9-12.)

As in *Poulis*, the Court can discern no allegations in Cammarano's Complaint that would avoid these compelling defenses, and Cammarano filed no answer to the motion to dismiss that specifies which of his allegations would overcome the identified defenses.  *See Poulis*, 747 F.2d at 870 (explaining that the proffered defense was "on its face, compelling," where plaintiffs

---

³ Cammarano asserts claims under state law for defamation and false light based on the allegation that Defendant Adams made an "untrue" public statement after the arrest that Cammarano's license to practice law had been "suspended in connection with the matter." (Compl. at 6.)  However, as noted above, it appears that Cammarano's law license was suspended in December 2021, and he was disbarred in April 2024.  *See Cammarano*, No. 147 DB 2021.  And in any event, as the Defendants argue, it appears that these claims would be barred by Pennsylvania's a one-year statute of limitations for such claims.  *See Oldham v. Pa. State Univ.*, 138 F.4th 731, 750 (3d Cir. 2025) (citing *Graham v. Today' s Spirit*, 468 A.2d 454, 457 (Pa. 1983)); *see also McClenaghan v. Turi*, 567 F. App'x 150, 154 (3d Cir. 2014) (*per curiam*) ("The relevant triggering event for the statute of limitations in a defamation action under Pennsylvania law, however, is the publication of the defamatory communication by the defendant, not the point in time when the plaintiff first learns of the communication.").

made no allegation in the complaint that would avoid the defense and did not respond to the motion to dismiss, and concluding that "[w]hile we express no opinion on whether summary judgment or dismissal would have been warranted on this ground, the existence of a prima facie defense is a factor to be weighed along with the foregoing factors.") (internal citations omitted). Thus, even if Cammarano could maintain a meritorious claim under federal or state law based on his arrest and prosecution, each Defendant has articulated a compelling defense to Cammarano's claims, which weighs in favor of dismissal. Even if the Court were to find the sixth *Poulis* factor to be neutral at this stage of the litigation, the first, third, fourth, and fifth *Poulis* factors weigh in favor of dismissal.

A plaintiff may have a meritorious claim, but he must prosecute that claim in accordance with the Federal Rules of Civil Procedure and this Court's orders to prove that claim and entitle him to judgment, if warranted. Absent a plaintiff who is participating in the legal process, this case cannot move forward.

## IV.    CONCLUSION

For the foregoing reasons, the Court finds that the *Poulis* factors weigh in favor of dismissing this action pursuant to Federal Rule of Civil Procedure 41(b) for Cammarano's failure to prosecute. Simply put, there is no way for this litigation to proceed without Cammarano's participation. An appropriate order will be filed separately.